## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**STONEY W. AULT,**

              **Petitioner,**

**v.**                                    **Civil Action No. 2:07cv88**
                                          **(Judge Maxwell)**

**TERESA WAID, Warden,**

              **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

This § 2254 was transferred from the Southern District of West Virginia on October 30, 2007. It was received by this Court on November 1, 2007.

On December 21, 2007, the respondent was directed to file a response to the petition on the limited issue of timeliness. The respondent filed her answer on January 17, 2008.

Because the respondent provided sufficient evidence to verify the timeliness of the petition, on August 25, 2008, the respondent was directed to show cause why the petition should not be granted.

On September 9, 2008, the petitioner was granted permission to supplement his petition. As a result, the respondent was given additional time to review the supplement and file a response.

The respondent filed a Motion for Summary Judgment and Memorandum in Support on November 5, 2008. Because the petitioner is proceeding *pro se*, the Court issued a Roseboro Notice on November 7, 2008, advising the petitioner of his right to file responsive material.

The petitioner filed his response on December 8, 2008.

### I. Procedural History

## A.  Petitioner's Conviction and Sentence

On November 14, 2000, the petitioner was indicted by the Circuit Court of Grant County, West Virginia, of three counts Sexual Assault in the First Degree in violation of W.Va. Code §61-8B-3, and two counts of Sexual Abuse by a Parent, Guardian or Custodian in violation of W.Va. Code § 61-8D-5(a).  Resp't Ex. 1.

The case against the petitioner proceeded to trial on June 3, 2002.  Resp't. Ex. 8.  On June 4, 2002, a Grant County petit jury found the petitioner guilty of First Degree Sexual Abuse (a lesser included offense of Count One) and guilty of count four, Sexual Abuse by a Custodian.  Id. at 346. The petitioner was acquitted on counts two, three and five.  Resp't Ex. 2.[1]

On October 8, 2002, the petitioner was sentenced to one to five years imprisonment on Count One, and ten to twenty years on Count 4, sentences to run concurrent.  Resp't Ex. 3.

## B.  Direct Appeal

On April 21, 2003, the petitioner appealed his conviction and sentence to the West Virginia Supreme Court of Appeals ("WVSCA").  Resp't Ex. 4.  On appeal, the petitioner asserted the

---

[1] The petitioner was accused of sexually assaulting a 7 year old girl who was in his care.  At the time, the petitioner was 51 years old and had accepted the girl into his home as a respite care provider for the Potomac Center.  The Potomac Center specializes in foster care and respite care placement for special needs children.  The victim in this case was a foster child in the care of the Department of Health and Human Resources (DHHR) and suffered from seizure disorder, Attention Deficit Hyper Activity Disorder (ADHD), fetal alcohol syndrome and prior abuse and neglect.  The victim was sent to the petitioner's home for temporary respite care placement when her foster father suffered a heart attack and was hospitalized.  While in the care of the petitioner and his girlfriend, the victim alleged that the petitioner took her into a room at his house known as the "pink room," put her on top of a piece of nautilus equipment, pulled her pants and underwear down, unzipped his pants and got on top of her.  The victim alleged that the petitioner then attempted to stick his "weenie" in her and that he put his finger in her butt.  The victim alleged that it hurt, but that the petitioner was distracted by another foster child in the house and she was able to get up, put her clothes back on and get out of the situation.  However, the victim also alleged that later that night, she was forced to sleep in the same bed as the petitioner where he again attempted to stick his "weenie" in her.  When that was unsuccessful, the victim alleged that the petitioner took her into the bathroom, placed Vaseline on her vagina and stuck his finger inside her.

following assignments of error:

(1) the trial court misapplied the Rape Shield Law, W.Va. Code § 61-8b-11(b);

(2) the trial court erred in allowing the child victim to testify using two-way television in a manner that did not adhere to the State statutory provisions for such testimony;

(3) the conviction cannot stand as the child victim's uncorroborated testimony is inherently incredible;

(4) the trial court erred in denying the defendant's Rule 29 motion;

(5) The trial court erred in failing to give a jury instruction proffered by the defendant; and

(6) the trial court erred by giving a lesser included offense instruction for First Degree Sexual Assault.

Id.

Petitioners' direct appeal was refused on October 2, 2003.  Id.

## C.  **Petitioner's State Habeas Petition**

The petitioner filed a *pro se* state habeas petition with the Circuit Court of Grant County on June 17, 2005.  Resp. Ex. 5.  In his state habeas petition, the petitioner asserted the following grounds for relief:

(1) the trial court misapplied the Rape Shield Law to exclude evidence of the victim's previous sexual experience;

(2) the trial court erred by not following the statutory procedures for using closed-circuit television testimony;

(3) the trial court erred in admitting the victim's uncorroborated testimony because it was inherently unreliable;

(4) the trial court erred by denying the petitioner's Rule 29 motion for acquittal;

(5) the trial court erred by failing to give the jury a <u>Payne</u> instruction;

(6) the trial court erred by instructing the jury on sexual abuse, a lesser included offense of sexual assault, and allowing the jury to convict him of the lesser offense;

(7) he was denied his constitutional right to a speedy trial;

(8) he was denied a fair trial due to prosecutorial misconduct;

(9) the trial court erred by having improper communications with the jury;

(10) he was denied counsel at his preliminary hearing;

(11) the trial court violated his constitutional right against double jeopardy;

(12) the trial court erred by being influenced by judicial bias during his sentencing and by allowing impermissible considerations to be included in his presentence report;

(13) the trial court erred by failing to require the State to prove that he was custodian for the purpose of the crime of sexual abuse by a custodian;

(14) the trial court erred by allowing a biased juror to remain on the jury;

(15) the trial court erred in allowing the jury to consider improper information about his criminal record;

(16) he was denied his constitutional right to freedom of speech because his girlfriend was not allowed to park in the Court parking lot;

(17) he was denied his constitutional right to effective assistance of counsel; and

(18) even if none of the above errors alone suffices to overturn his conviction, the cumulative error from the trial does.

Resp't Ex. 5; Ex. 6 at 161-162.

The state court held an omnibus evidentiary hearing on August 3, 2006. Resp't Amd. Ex. 6 (dckt. 38) at 158. In a ninety-one page order entered on August 10, 2006, the state court denied the petitioner's state habeas petition. Id. at 246. The petitioner filed an appeal of that decision to the WVSCA on February 26, 2007. Resp't Ex. 7. The WVSCA refused the petitioner's appeal on September 11, 2007. Id.

## D. Petitioner's Federal Habeas Petition

In his federal habeas petition, the petitioner asserts the following grounds for relief:

(1) the trial court erred by giving an instruction on sexual abuse, a lesser included offense, when the victim's testimony did not support anything other than the greater offense of sexual assault, which offense the petitioner denied committing;

(2) he was denied his constitutional right to effective assistance of trial counsel;

(3) the trial court denied him due process of law by allowing his prior criminal record to be viewed by the jury;

(4) the trial court abused its discretion by blindly and mechanically applying the Rape Shield Law;

(5) the trial court erred in allowing the child victim to testify using two-way television in the manner done;

(6) the victim's testimony was uncorroborated and inherently incredible;

(7) the trial court erred in denying his Rule 29 motion for judgment of acquittal;

(8) the trial court erred in failing to give a jury instruction proffered by the defendant;

(9) the trial court erred by giving the lesser included offense instruction for First Degree Sexual Assault; and

(10) the appellate court should have applied the cumulative error doctrine.

On September 4, 2008, the petitioner raised the following supplemental grounds for relief:

(11) plain error; faulty, illegal and amended indictment to convict; and

(12) ineffective assistance of appellate counsel.

## E.   Respondents' Contentions

The respondent denies that any violation of the petitioner's rights has occurred.  Moreover, in support of her motion for summary judgment, the respondent asserts that there are no genuine issues of material fact with respect to the claims raised in the petition and that she is entitled to judgment as a matter of law.  In addition, the respondent asserts that federal relief is available only for claims of constitutional dimension.  Therefore, to the extent that the petitioner's claims allege violations of state law, the respondent argues that those claims are not cognizable on federal habeas review.  Finally, the respondent asserts that the petitioner has failed to state a claim for which relief can be granted and that the petitioner is not entitled to relief on any of his claim.

## F.   The Petitioner's Reply

In his reply, the petitioner reargues the claims raised in the petition in an attempt to rebut the arguments made by the respondent in her motion.

## II.   Standards of Review

## A.   Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases.  See Blackledge v. Allison, 431 U.S. 63, 80 (1977).  So too has the Fourth Circuit Court of Appeals.  Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991).  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. <u>Miller v. Federal Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Anderson v Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id.</u> "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather then encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-588 (1986).

**B.** **Federal Habeas Review Under 28 U.S.C. § 2254**

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). However, the federal court may not grant habeas relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.) cert. denied, 524 U.S. 830 (2001)(quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)). However, the court must still "confine [it's] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently that this Court has on a set of materially indistinguishable facts."

Williams, 529 U.S. at 413.  A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. "An unreasonable application of federal law is different from an incorrect application of federal law."  Id. at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2).  In reviewing a state court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).

However, habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004).  "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, supra.

Here, the petitioner's claims were properly presented to the courts of the State.  Because the petitioner's claims were adjudicated on the merits in State court, the State's findings of fact and conclusions of law are due the appropriate deference.

### III.   Analysis

Although pro se petitions are to be liberally construed as set forth in Haines v. Kerner, 404

U.S. 519 (1972), habeas petitions must meet heightened pleading requirements. <u>McFarland v.</u> <u>Scott</u>, 512 U.S. 849 (1994). "[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." <u>Blackledge v. Allison</u>, 431 U.S. 63, 75, n. 7 (1977) (internal quotations omitted). A habeas petitioner must come forth with evidence that a claim has merit. <u>Nickerson v. Lee</u>, 971 F. 2d 1125, 1136 (4th Cir. 1992), <u>cert. denied</u>, 507 U.S. 923 (1993). Unsupported, conclusory allegations do not entitle a habeas petitioner to relief. <u>Id.</u>

**A. <u>Ground One - Giving of Instruction on Lesser Included Offense of Sexual Abuse</u>**

In this ground, the petitioner asserts that the trial court erred by giving an instruction on sexual abuse, a lesser included offense of sexual assault, when the victim's testimony did not support anything other than the greater offense of sexual assault and the petitioner denied committing the alleged offenses. In support of this claim, the petitioner asserts that the victim's testimony clearly met the requirements of the greater offense of sexual assault in that she testified to both intrusion and intercourse. The petitioner alleges that no where in the victim's testimony did she allege the elements of sexual abuse. Moreover, the petitioner asserts that he denied all of the accusations against him and that there was no evidentiary conflict which supported giving an instruction on the lesser included offense. The petitioner asserts that although the State requested the charge, it was not entitled to such charge, especially in light of the defendant's objection. Additionally, the petitioner asserts that the trial court failed to apply the appropriate standard for determining whether the charge was warranted.

After the petitioner's Omnibus Evidentiary Hearing, the state habeas court found:

> The Court concludes that the Petitioner failed to prove that the trial court's inclusion in its jury instruction and on the verdict form of sexual abuse, a lesser included offense of sexual assault as charged in the indictment, denied the Petitioner his right to a fair trial or his right to be

informed of the nature and cause of the accusations against him . . .

'A defendant does not have the right to preclude the State from seeking a lesser included offense instruction where it is determined that the offense is legally lesser included and that such an instruction is warranted by the evidence.' Syl. Pt. 4, State v. Wallace, 175 W.Va. 663, 337 S.E.2d 321 (1985).

'An offense, in order to be a lesser included offense, must be a less serious crime in terms of its classification and degree.' State v. Penwell, 199 W.Va. 111, 116, 483 S.E.2d 240, 245 (1996).

The test for determining whether a particular offense is a lesser included offense is that the lesser included offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.' Syl. Pt. 4, State v. Bell, 211 W.Va. 308, 565 S.E.2d 430 (2002) . . .

To prove sexual assault in the first degree, the State must show that a defendant, at least fourteen years old, engaged in sexual intercourse or sexual intrusion with a child under the age of twelve. W.Va. Code § 61-8B-3. The statute defines sexual intercourse as any act between persons involving penetration, however slight, of the female sex organ by the male sex organ, or involving contact between sex organs of one person and the mouth or anus of another person. *Id.* The statute defines sexual intrusion as any act between persons involving penetration, however slight, of the female sex organ, or of the anus of any person, by an object, for the purpose of degrading or humiliating the person so penetrated or for gratifying the sexual desires of either party. *Id.*

To prove sexual abuse in the first degree, the State must show that a defendant, at least fourteen years old, subjected a child under the age of twelve to sexual contact. W.Va. Code § 61-8B-7. The statute defines sexual contact as any intentional touching, either directly or through clothing, of the anus or any part of the sex organs of a person, or the breasts of a female, or the intentional touching of any part of another person's body by the actor's sex organs, where the victim is not married to the actor and the touching is done for the purposes of gratifying the sexual desire of either party. *Id.*

Both first degree sexual assault and first degree sexual abuse require that a defendant, at least fourteen years old, engage in a sexual act with the victim under the age of twelve. First degree sexual assault requires that the sexual act be sexual intercourse or sexual intrusion. First degree sexual abuse requires only that the sexual act be sexual contact. To prove penetration as required for first degree sexual assault, the perpetrator must necessarily make sexual contact with the victim. Therefore, all of the requirements for first degree sexual abuse must be shown to commit the offense of first degree sexual assault. First degree sexual assault, however, requires the additional element of penetration. Consequently, first degree

sexual abuse constitutes a lesser included offense of first degree sexual assault.

The petitioner knew that the victim had accused him of committing sexual acts against her. He had the statement she gave to the police and Lynn Foley prior to the trial. In her statement, the victim accuses the Petitioner of both penetration and mere sexual contact. [*State v. Ault*, No. 00-F-22 p. 66, Transcript of Interview Taken August 4, 2001]. Therefore, the Petitioner knew the nature of the accusations against him.

As stated above, the Court may instruct the jury that if they do not find a defendant guilty of the charge for which he was indicted, the jury may, nevertheless, find the defendant guilty of a lesser included charge. In this case, the Court correctly instructed the jury of the requirement for sexual assault in the first degree and its lesser included charge of sexual abuse in the first degree. The jury found sufficient evidence to convict the Petitioner of sexual abuse in the first degree. The Court did not violate the Petitioner's right to a fair trial or his right to know the nature of the accusations against him by instructing the jury on the lesser included charge of sexual abuse in the first degree and allowing the jury to convict the Petitioner of the same.

Resp't Amd. Ex. 6 (Order Denying State Habeas Petition) at 189-92.

Upon an independent review of the record, the undersigned finds that the state court's adjudication of petitioners' ground one was not contrary to clearly established federal law as neither the petitioner, the respondent, nor the undersigned, can find a Supreme Court case which forbids a trial court from giving a lesser included offense instruction if the charge is supported by the evidence.

Additionally, in light of the evidence presented in the state court proceedings, the undersigned does not believe that the state court's adjudication of ground one involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. As noted by the state habeas court "[t]he test for determining whether a particular offense is a lesser included offense is that the lesser included offense must be such that it is impossible to commit the greater offense without first having

committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense." Resp't Ex. 6 at 190 (citing Syl. Pt. 4, State v. Bell, 211 W.Va. 308, 565 S.E.2d 430 (2002)). Moreover, based on the statutory definitions of sexual assault in the first degree, and first degree sexual abuse, it is clear that one cannot commit first degree sexual assault without first committing first degree sexual abuse. The petitioner's argument that the two are separate and distinct charges because Sexual Assault in the First Degree requires an element (penetration) not found in First Degree Sexual Abuse, is off the mark. Sexual Assault in the First Degree is the *greater* offense. The test for determining whether a charge is a lesser included offense is whether the *lesser* offense contains an element which is not required in the greater offense.

Accordingly, the undersigned recommends that ground one be denied.

**B. Ground Two - Ineffective Assistance of Trial Counsel**

In this ground, the petitioner asserts three incidents of ineffective assistance of trial counsel. First, the petitioner asserts that trial counsel was ineffective for agreeing to allow the child victim's Guardian at Litem ("GAL") to be present in the testimony room with the victim during her closed-circuit television testimony. Second, the petitioner asserts that counsel was ineffective for failing to strike a juror for cause, or to use a peremptory strike, on a juror who knew the victim and one of the prosecution's witnesses. Third, the petitioner asserts that counsel was ineffective for allowing a copy of his prior criminal record to be admitted to the jury for their consideration.

1. Allowing GAL in Testimony Room with Victim

In support of this ground, the petitioner asserts that pursuant to W.Va. Code § 62-6b-4(b)(1), the only persons permitted to be in the testimony room for closed-circuit television

testimony, are the prosecuting attorney, the defendant's attorney, the witness and the equipment operator. Thus, the petitioner asserts that his rights were violated when the GAL was allowed in the testimony room with the victim, and counsel was ineffective for agreeing to such an arrangement. In particular, the petitioner notes that the GAL patted the victim reassuringly during her testimony and verbally coached the victim by telling her she was doing a good job, and by telling her to "tell them what you remember." The petitioner asserts that the presence of the GAL tainted and influenced the victim's testimony, thus, her presence in the testimony room was highly prejudicial and should have been prevented.

2. <u>Failing to Strike Juror who Knew Victim and One of Prosecution's Witnesses</u>

In support of this ground, the petitioner asserts that trial counsel failed to properly *voir dire* Juror Martin. The petitioner asserts that during *voir dire*, Juror Martin revealed that she knew the victim in this case and one of the prosecution's witnesses. Juror Martin informed the court that she had been the victim's 4-H leader for a period of two months, about two months prior to the trial, and that her children attended the same school as the victim. In addition, Juror Martin informed the Court that she also knew one of the prosecution's witnesses through the 4-H. Further, the petitioner asserts that although Juror Martin stated that she did not know either the victim or the other witness very well, she also did not unequivocally state that she could render an impartial verdict. In fact, the petitioner asserts that Juror Martin stated that she did not know if she could be impartial.

3. <u>Allowing Jury to See Copy of Petitioner's Prior Criminal Record</u>

In support of this ground, the petitioner asserts that evidence of his prior criminal record was inadvertently given to the jury. Moreover, the jury clearly considered that evidence

because it specifically asked the Court what "CDW" meant.[2]  When the jury requested information on what CDW stood for, counsel for the petitioner was concerned that the jury would think that CDW involved children and would be highly prejudicial to the petitioner.  Counsel for the petitioner requested that the Court explain to the jury that his CDW arrest had nothing to do with children.  That motion was denied.

After the petitioner's Omnibus Evidentiary Hearing, the state habeas court found:

> The Court concludes that the Petitioner failed to prove his trial counsel was ineffective in violation of his right to counsel as guaranteed by the US Const. Amend. VI and the WV Const. Art. III § 14.
>
> ***
>
> 'In West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.E.2d 674 (1984): (1) counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'  Syl. Pt. 1, State v. Frye, ___ S.E.2d ___, 2006 WL 386363 (WVSC Feb. 17, 2006).
>
> 'In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance which at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions.  Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.'  Syl. Pt. 2, Id. . . .
>
> 'The strong presumption that counsel's actions were the result of sound trial strategy . . . can be rebutted only by clear record evidence that the strategy adopted by counsel was unreasonable.'  Coleman, 215 W.Va. At 596, *supra* p.23.

---

[2] The petitioner's prior criminal history was not extensive.  The form sent to the jury showed that the petitioner had an arrest for disorderly conduct and CDW.  However, the jury did not know what CDW was and questioned the court about it.  The Court told the jury that they were not to consider that evidence and that the information on the petitioner's prior criminal history was irrelevant to the case and should have been redacted from the form.  The Court never told the jury that CDW stood for Carrying a Dangerous Weapon.

\*\*\*

**1. The Petitioner argues that his counsel acted ineffectively when they failed to strike a potentially bias juror from his jury panel.** [*Ault v. Haines*: No. 05-C-39, Petition for Writ of Habeas Corpus p. 5(a)].

The Petitioner asserts that Juror Martin, who testified during voir dire that she led a 4-H club which the victim had briefly attended, prejudiced the entire jury against him. [*Id.*] The Petitioner claims that his counsel should have moved to strike this juror for cause based on her association with the victim and her foster family. [*Id.*].

As discussed in ground fourteen, *supra*, the Court determined that Juror Martin sufficiently indicated that she would decide the case only on the evidence provided at trial and the instructions given by the Court. The juror said she would not be influenced by her very brief acquaintance with the victim. Therefore, even had defense counsel moved to strike her for cause, the Court likely would have properly denied their request.

Defense counsel could have used one of the Petitioner's strikes to remove the juror from the jury if the Petitioner worried that she would prejudice the jury against him. The court assumes, and the Petitioner has provided no evidence to the contrary, that defense counsel and the Petitioner discussed whom to strike from the jury and determined that Juror Martin need not be stricken. Therefore, defense counsel did not act ineffectively by failing to strike Juror Martin from the jury.

\*\*\*

**12. The Petitioner asserts that his counsel acted ineffectively by introducing into evidence the case submission report which contained the Petitioner's criminal history and which was sent back to the jury room and seen by the jury during deliberations.** [*Ault v. Haines*, No. 04-C-2, Petition for Writ of Habeas Corpus p.11].

As discussed in ground fifteen, *supra*, the Court agrees that the Petitioner's criminal history should not have been introduced into evidence in any manner. Defense counsel did err in neglecting to remove the Petitioner's criminal history from the forensic case submission report. However, as the Court has already discussed, any error caused by the introduction of the Petitioner's criminal history was cured by the Court's curative instruction. The Court is not convinced that the outcome of the trial would have been any different if this error had not occurred. Therefore, the Petitioner is not entitled to habeas corpus relief based on this ground alone.

Resp't Amd. Ex. 6 at 225-26, 228-29, 238 (emphasis in original).

Upon an independent review of the record, the undersigned finds that the state court's

adjudication of petitioners' ground two was not contrary to clearly established federal law. The state court cited the appropriate standard of review, <u>Strickland v. Washington</u>, *supra*. Additionally, in light of the evidence presented in the state court proceedings, the undersigned does not believe that the state court's adjudication of ground two involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

<u>Failure to Strike Juror Martin</u>

Although Juror Martin was acquainted with the child victim and one of the prosecution's witnesses, she did not have a close relationship with either party. Moreover, Juror Martin stated, although not unequivocally, that she did not think that her acquaintance with those parties would influence her decision in this case. In fact, it is quite clear that the jury, as a whole, took its role as the trier of fact very seriously. The jury deliberated for a long time, at one point questioning the Court on the procedure for a hung jury. In addition, the jury acquitted the defendant of the majority of the charges and only found him guilty on ground one as to the lesser included offense. Thus, assuming that defense counsel should have requested to strike Juror Martin, the petitioner has not shown that such motion would have been granted, nor that any prejudice occurred as a result of Juror Martin's presence on the jury.

<u>Allowing the Jury to see Criminal Record</u>

The undersigned agrees that in this case, the Petitioner's criminal history should not have been introduced into evidence and that defense counsel erred by neglecting to remove said criminal history from the forensic case submission report. However, the undersigned also agrees that this

error was harmless. When it was discovered that the petitioner's criminal history was inadvertently left on the forensic case submission report and that the jury had noticed it, the Court gave the jury an instruction to disregard that history as irrelevant and not to consider it in their deliberations. The jury is presumed to do as instructed. Richardson v. Moss, 481 U.S. 200, 208 (1987) (requiring an overwhelming probability to rebut the presumption that a jury will follow the court's instruction to disregard irrelevant evidence). Moreover, the jury did not question the petitioner's criminal history further. Thus, the undersigned does not believe that but for counsel's error, the outcome of the proceedings would have been different.

Allowing GAL in Testimony Room

The issue of counsel's ineffective with regard to the GAL was not raised in the petitioner's state habeas petition. However, the Court did address whether allowing the GAL in the testimony room with the child victim was appropriate. In so deciding, the state habeas court found:

> The Petitioner also agreed to allowing the GAL to be present in the room with the victim while she testified and stated that it might even be helpful. [*Id.* at p. 8 line 12 - p. 9 line 22]. Even if the GAL's presence did reassure the victim, as the defense counsel pointed out, the GAL would have been able to be present in the courtroom if the victim had testified from the witness chair and the GAL would have had the same reassuring effect. [*Id.*].

Resp't Ex. 6 at 176.

Thus, in essence, the state habeas court found that it was not error to allow the GAL in the testimony room, and even if it was, the petitioner was not prejudiced by that error. Therefore, if it was not error to allow the GAL in the testimony room, counsel's agreeing to such allowance was not deficient and his performance cannot be deemed ineffective. Alternately, even if counsel should have objected to the GAL being in the testimony room, the petitioner was not prejudiced by that error and counsel was not ineffective.

Although allowing the GAL in the testimony room with the victim was not the normal procedure under the statute, the undersigned is not convinced that it was error for defense counsel to agree to allow the GAL in the testimony room with the child victim. Moreover, the undersigned agrees with the state court that allowing the GAL in the testimony room was at best, harmless error. The petitioner provides no evidence, other than his own self-serving speculation, to show that the GAL's presence in the testimony room had any effect on the jury. In addition, the trial court explained the presence of the GAL to the jury which rendered her presence innocuous.[3]

Accordingly, ground two should be denied.

## C. Ground Three - Allowing Prior Criminal Record to be Viewed by Jury

In this ground, the petitioner asserts that the trial court denied him due process of law by allowing his prior criminal record to be viewed by the jury. In support of this claim, the petitioner asserts that upon the motion of his trial counsel, the court admitted into evidence, a form which contained his prior criminal record. Specifically, the form noted that the petitioner had been arrested for disorderly conduct and CDW (carrying a dangerous weapon). The petitioner asserts that there was absolutely no reason for his prior criminal record to be submitted to the jury. Moreover, the petitioner asserts that the jury considered such record as evidenced by its question to the court asking what CDW meant. The petitioner asserts that because there is no way to know if his conviction was predicated in part on the jury's knowledge of his prior criminal record, his right to a fair trial was

---

[3] The court explained: "I wanted to let you know one loose end from the live closed-circuit television of the child this morning. If you saw somebody, blue shirt there beside her, at times, there beside her. That was M. Zelene Harman who is an attorney from Franklin, and very often when you have a child involved in any type of case, the Court appoints an attorney just to be with the child and assist them in their testimony, if they don't understand a question or things of that sort. So, that's who that was who was seated beside her. You probably may have just seen an arm, and you wondered whose arm that was, that's whose it was." Resp't Ex. 8 (Trial Transcripts) at 87-88.

violated.

After the petitioner's Omnibus Evidentiary Hearing, the state habeas court found:

> The Court concludes that the Petitioner failed to prove that the trial court's curative instruction to the jury not to consider the Petitioner's criminal record insufficiently rectified the error at trial as to violate the Petitioner's right to a fair trial by due process of law as guaranteed by the US Const. Amends. V and XIV and the WV Const. Art. III § 10.

*** 

> 'Ordinarily where objections to question or evidence by a party are sustained by the trial court during the trial and the jury [is] instructed not to consider such matter, it will not constitute reversible error.' Syl. Pt. 7, State v. Catlett, 207 W.Va. 747, 536 S.E.2d 728 (2000).
>
> 'Where the trial court erroneously permits inadmissible matters to be introduced into evidence, such error does not create a manifest necessity for a mistrial.' Syl. Pt. 6, *Id.*
>
> 'Where improper evidence of a non-constitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction an analysis must then be made to determine whether the error had any prejudicial effect on the jury.' Syl. Pt. 3, Moss v. Trent, 216 W.Va. 192, 603 S.E.2d 656 (2004).

*** 

> Neither the State nor the Court argue that the Petitioner's criminal history was properly left on the forensic case submission report. All participants in the Petitioner's case agree that the information about the Petitioner's prior crimes should have been removed from the exhibit before submitting it to the jury. However, as soon as the Court became aware of the mistake, the Court issued a curative instruction to the jury that the Petitioner's criminal history was irrelevant to this case and should not be considered in their deliberations. The Petitioner offers no evidence that the jury disregarded the Court's instruction and considered the impermissible evidence in its deliberations.
>
> Furthermore, although defense counsel mistakenly introduced the improper evidence in this case, under the test set forth above for determining

the effect of improper evidence submitted by the State, any error suffered by the Petitioner was harmless. Without the evidence of the Petitioner's criminal history, the State's case still consists of sufficient evidence to convict the Petitioner of the crimes charged. In fact, the Petitioner's criminal history, as the Court stated, is irrelevant to this case and does not change the evidence showing that the Petitioner sexually abused the victim. There is no evidence or indication that the Petitioner's criminal history influenced the jury in any way other than by sparking their curiosity as to the meaning of "C.D.W." Therefore, the Court did not err in upholding the Petitioner's convictions despite his criminal history's admission into evidence.

Moreover, the Petitioner failed to raise the inclusion of his criminal history as improper evidence as error in his appeal. Therefore, this ground should not be considered in a petition for writ of habeas corpus.

Resp't Amd. Ex. 6 at 219-222.

Upon an independent review of the record, the undersigned finds that the state court's adjudication of petitioners' ground three was not contrary to clearly established federal law. See Brecht v. Abrahamson, 507 U.S. at 637 (an error is harmful only if it had a "substantial and injurious effect or influence in determining the jury's verdict") (internal quotation omitted).

Additionally, in light of the evidence presented in the state court proceedings, the undersigned does not believe that the state court's adjudication of ground three involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. During deliberations, the jury sent a note to the judge asking what "CDW" meant. Resp't Ex. 8 (Trial Transcripts) at 323-34. After consulting with the prosecution and defense counsel, the trial judge drafted the following response: "To the jurors: You are not permitted to consider the Defendant's criminal history. That portion of the form should have been deleted. It is irrelevant to this case." Id. at 325. It is presumed, therefore, that the jury followed the court's instructions and disregarded the irrelevant evidence and the petitioner provides

no evidence to overcome that presumption. <u>See</u> <u>Richardson v. Moss</u>, *supra*. Consequently, any error in allowing the jury to view the petitioner's prior criminal history was harmless.

Accordingly, ground three should be denied.

**D. <u>Ground Four - Improper Application of West Virginia Rape Shield Law</u>**

In this ground, the petitioner asserts that the trial court improperly applied West Virginia's Rape Shield Law. In support of this claim, the petitioner asserts that the trial court blindly and mechanically applied the rape shield statute when it disallowed exculpatory and credibility evidence which would have contradicted the uncorroborated testimony of the child victim. Specifically, the petitioner asserts that the jury should have heard evidence of the victim's prior sexual abuse, her sexual acting out and the medical evaluation by Dr. Scarce, the doctor that examined the child victim when she was taken to the emergency room. The petitioner asserts that this evidence contradicted the victim's testimony that the petitioner sexually assaulted and abused her.

After the petitioner's Omnibus Evidentiary Hearing, the state habeas court found:

> The Court concludes that the Petitioner failed to prove that the trial court's application of the Rape Shield law to evidence of the victim's sexual history violated the Petitioner's right to due process of law as guaranteed by the US Const. Amends. V and XIV and the WV Const. Article III § 10.
>
> ***
>
> 'Evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible . . . [except] solely for the purpose of impeaching credibility, if the victim first makes his or her previous sexual conduct an issue in the trial introducing evidence with respect thereto.' W.Va. Code § 61-8B-11(b).
> 'The provisions of W.Va. Code, 61-8B-11, limiting the defendant's right to present evidence of the victim's prior sexual conduct are constitutional under the provisions of the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution.' Syl. Pt. 5, <u>State v. Guthrie</u>, 205 W.Va. 326, 518 S.E.2d 83

(1999).

'The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defenses.' Syl. Pt. 6, *Id.*

'Statements about sexual activity involving an alleged victim which are not false are evidence of the alleged victim's sexual conduct, even though such conduct was involuntary – and such evidence is *per se* within the ordinary scope of rape shield laws.' State v. Quinn, 200 W.Va. 432, 437-438, 490 S.E.2d 34, 39-40 (1997) . . .

The Petitioner argues that by refusing to allow evidence of the victim's previous sexual conduct, the Court allowed the jury to infer that the victim learned her precocious sexual knowledge from the Petitioner. He suggests that had the evidence been presented to the jury, the jury would have seen that the victim's previous sexual knowledge gave her the tools to fabricate the allegations against the Petitioner. [*Id.*, Petition for Writ of Habeas Corpus pp.5(h)-5(i), filed 6/17/05]. At the omnibus hearing on August 3, 2006, the Petitioner further argued that he did not wish to introduce evidence of the victim's past sexual conduct to tarnish the child's reputation as is forbidden by the Rape Shield law. Rather, the Petitioner wanted to introduce the evidence to show that the victim had the knowledge to fabricate the allegations made against the Petitioner.

The evidence the Petitioner sought to introduce concerned the prior sexual conduct and sexual history of the victim. There was no indication, and the Petitioner did not argue, that the victim's previous allegations of sexual abuse were false. Therefore, evidence of the previous abuse is barred by the Rape Shield statute. Quinn, 200 W.Va. At 437-438, 490 S.E.2d at 39-40.

The evidence of the victim's prior sexual conduct, such as masturbation and attempts to insert objects into her vagina, is also barred by the Rape Shield statute. Not only are the acts irrelevant to the charges against the Petitioner, but they also would be highly prejudicial to the State and to the victim's testimony. The Court conducted a pretrial hearing and concluded the same:

Upon consideration of the arguments made, the Court would now find as follows:

1. That the four areas listed by the Defendant in one of its Motions are acts of sexual conduct which are covered by the Rape Shield Statute.

2. The Defendant would not suffer any manifest injustice to his 6th Amendment Rights by denying the Defendant the opportunity

to either cross examine witnesses or present independent witnesses with regard to the issues set forth in their Motion.

3. It would be more prejudicial to the victim and the State's interest than it would be probative to permit the Defendant to raise the various previous acts of sexual conduct of the alleged victim.

Therefore, the Court does grant the Guardian ad Litem's Motion in Limine. The Defendant will not be permitted to introduce any of said evidence or cross examine any witnesses with regard to same.

[*State v. Ault*, No. 00-F-22 at p. 270, Order entered 11/1/01].

Furthermore, the Petitioner's argument that the Court should have allowed him to introduce the victim's past sexual abuse to demonstrate her knowledge enabling her to fabricate the charges against him has no merit. W.Va. Code § 61-8B-11(b) clearly states that evidence prohibited by the Rape Shield statute can only be introduced to impeach the credibility of the victim. The statute does not provide an exception to the evidence's inadmissibility to show a victim's precocious sexual knowledge.

At trial, the State did not present any evidence of the victim's prior sexual conduct and therefore the excluded evidence could not be introduced to impeach the victim's credibility. Moreover, there is no discussion in the trial transcript about where the victim learned her sexual knowledge, and the phrases the victim used in describing the events were rudimentary and not indicative of abnormal sexual knowledge for a child that are. [*Id.*, Testimony of [A.C.], transcribed by County Court Reporters, *passim*, filed 1/29/03]. And, despite the Court's ruling on the evidence's admissibility, the Petitioner's counsel did argue that the victim could have fabricated the charges against him. [*Id.*, Trial Transcript, p. 313 lines 20-24, filed 1/13/03].

Resp't Amd. Ex .6 at 164-68.

Upon an independent review of the record, the undersigned finds that the state court's adjudication of petitioners' ground four was not contrary to clearly established federal law. Absent "circumstances impugning fundamental fairness or infringing specific constitutional protections," admissibility of evidence does not present a federal question. Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960). The Supreme Court has narrowly defined "the category of infractions that violate 'fundamental fairness.'" Dowling v. United States, 493 U.S. 342, 352 (1990). With regard to the application of West Virginia's Rape Shield Law, the Fourth Circuit has found that a

mechanistic exclusion of evidence under the statute may deny a defendant his right to confront and cross-examine his accuser.  Barbe v. McBride, 521 F.3d 443, 458 (4th Cir. 2008).

"The trial court's consideration of the probative value versus the prejudicial effect of particular pieces of evidence, absent extraordinary circumstances, will not be disturbed."  Beasley v. Holland, 649 F.Supp. 561, 565 (S.D.W.Va.1986) (citing United States v. MacDonald, 688 F.2d 224 (4th Cir.1982). "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must 'tread gingerly' and exercise 'considerable self-restraint.'" Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002)(quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir.1990)).

Additionally, in light of the evidence presented in the state court proceedings, the undersigned does not believe that the state court's adjudication of ground four involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Prior to trial, the state court heard argument and examined the proposed evidence which involved sexual acts subject to the rape shield law.  Resp't Ex. 10. With regard to this issue, the trial court found:

> The Defendant would not suffer any manifest injustice to his 6th Amendment Rights by denying the Defendant the opportunity to either cross-examine witnesses or present independent witnesses with regard to the issues set forth in the Motion . . .
> It would be more prejudicial to the victim and the State's interest than it would be probative to permit the Defendant to raise the various previous acts of sexual conduct of the alleged victim.

Resp't Ex. 10 at 3-4.

Thus, the trial court did not blindly and mechanistically apply West Virginia's Rape Shield

Law in this case. Instead, the court appropriately balanced the interests of the parties and considered the probative versus prejudicial value of the evidence. To the extent that the petitioner argues that the decision of the trial court was wrong, the petitioner has failed to present extraordinary circumstances which would permit this court, on federal habeas review, to reweigh the evidence presented to the trial court and disturb the factual and evidentiary findings made by that court.

Accordingly, ground four should be denied.

## E. Ground Five - Improperly Allowing Child Victim to Testify Using Two-Way Television

In this ground, the petitioner asserts that the trial court erred in allowing the child victim to testify using two-way television in the manner done. In support of this ground, the petitioner asserts that the statute which allows testimony by closed-circuit television sets forth specific procedures to be followed in determining whether such testimony is necessary so that the defendant's constitutional rights are not trampled. The petitioner asserts that the trial court failed to follow the appropriate procedures and did not comply with the statute in finding that closed-circuit television was appropriate in this case. Thus, the petitioner asserts that his right to a fair and impartial trial was violated.

After the petitioner's Omnibus Evidentiary Hearing, the state habeas court found:

> The Court concludes that the Petitioner failed to prove that the trial court's allowance of the victim to testify via closed-circuit television violated his right to confront witnesses against him as guaranteed by the US Const. Amend. VI and the WV Const. Art. III § 14.
>
> ***
>
> 'The Confrontation Clause reflects a *preference* for face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public poverty and the necessities of the case.' Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 3165 (1990).
> 'Use of the . . . closed circuit television procedure, where necessary

to further an important state interest, does not impinge upon the truth-seeking or symbolic purposes of the Confrontation Clause.' *Id.* at 852, 3167.

'Accordingly, we hold that, if the State makes an adequate showing of necessity, the state interest in protecting the child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant. *Id.* at 855, 3169.

'The requisite finding of necessity must of course be a case-specific one: The trial court must hear evidence and determine whether use of the [] closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify.' *Id.*

'The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant . . . the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimus, i.e.*, more than 'mere nervousness or excitement or some reluctance to testify.' *Id.* at 856, 3169.

'We conclude that where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to face- confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation. Because there is no dispute that the child witnesses in this case testified under oath, were subject to full cross-examination, and were able to be observed by the judge, jury, and defendant as they testified, we conclude that, to the extent that a proper finding of necessity has been made, the admission of such testimony would be consonant with the Confrontation Clause.' *Id.* at 857, 3170.

'Prior to ordering that the testimony of a child witness may be taken through the use of live, two-way closed circuit television, the circuit court must find by clear and convincing evidence, after conducting an evidentiary hearing on the issue, that:

1) The child is otherwise competent;

2) Absent the use of live, two-way closed-circuit television, the child witness will be unable to testify due solely to being required to be in the physical presence of the defendant while testifying;

3) The child witness can only testify if live, two-way closed-circuit television is used in the trial; and

4) The state's ability to proceed against the defendant without the child witness' live testimony would be substantially impaired or precluded.' W.Va. Code § 62-6B-3(b).

'In determining whether to allow a child witness to testify through

live, two-way closed-circuit television the court shall appoint a psychiatrist, doctoral-level psychologist or a licensed clinical social worker with at least five years of significant clinical experience in the treatment and evaluation of children who shall serve as an advisor or friend of the court to provide the court with an expert opinion as to whether, to a reasonable degree of professional certainty, the child witness will suffer severe emotional harm, be unable to testify based solely on being in the physical presence of the defendant while testifying and that the child witness does not evidence signs of being subjected to undue influence or coercion.' W.Va. Code § 62-6B-3(d).

'When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined.' State v. Johnson, 210 W.Va. 404, 411, 557 S.E.2d 811, 818 (2001) . . .

The Petitioner argues that the Court violated his Sixth Amendment right to confrontation by not adhering to the statutory provisions for allowing a witness to testify by closed-circuit television. [*Ault v. Haines*, No. 05-C-39, Supplemental Petition for Writ of Habeas Corpus]. Specifically, the Petitioner contends that the Court failed to hold a hearing on allowing the victim to testify by closed-circuit television; that the Court took no evidence regarding the victim's ability to testify in court; and that the GAL was in the room with the victim while she testified although the statute did not provide for the GAL to be there. [*Id.* at pp. 6, 9-10]. The Petitioner states that the GAL's presence reassured the victim and made cross-examination less effective. [*Id.*]. The Petitioner also argues that allowing the victim to testify via closed-circuit television permitted the jury to make the impermissible inference that the closed-circuit television testimony was necessary to protect the child from Petitioner. [*Id.*, Petition for Writ of Habeas Corpus p. 5(g)]. At the omnibus hearing on August 3, 2006, the Petitioner voiced the above objections to the Court's allowance of closed-circuit testimony and also argued that the Court should not have permitted it because the GAL moved for closed-circuit testimony when the statute provides that only the State may do so.

The fact that the GAL filed the motion to used (sic) closed-circuit testimony instead of the State is inconsequential. The statute does not mention a GAL's ability to file the motion because the statute does not contemplate the appointment of a GAL. However, in this case the Court correctly appointed a GAL to represent the interest of a young child subjected to sexual abuse. The GAL properly fulfilled her role by filing motions to protect the physical, mental, and emotional well-being of the child. One of such motions was the motion to permit the victim to testify via closed-circuit television. If the GAL had not brought this motion, the Court is convinced that the State would have filed the motion and the same outcome would have resulted.

Contrary to the Petitioner's belief, the Court did hold a hearing, at which he was present and represented by counsel, on whether to permit the victim to testify by closed-circuit television. [*State v. Ault*, No. 00-F-22 p. 279, Order entered 2/19/02]. At that hearing, the Court received evidence from not one, but two master level psychologists, who both stated that the victim would be unable to communicate in the presence of the Petitioner. [*Id.*]. In the Order from the hearing, the Court made the requisite findings under the statute:

> The Court would find as follows:
>
> 1. That the alleged victim is competent to testify as a witness.
> 2. That due to the alleged victim's post traumatic stress syndrome, the size variance between she and the Defendant; her mental, emotional, and physical maturity level; her regression into former adverse behaviors after unintentionally seeing the Defendant in the community; her regression upon seeing men of similar physical description as the Defendant; and other factors set forth in the record, the witness would be unable to testify, absent the use of live, two-way closed-circuit television, due solely to being in the physical presence of the Defendant.
> 3. That due to the child witness' vulnerability; maturity level; mild mental retardation; ADHD, traumatic stressors in her life; and other factors set forth in the record, the witness can only testify if closed circuit television is used. **Further, the psychologist who evaluated the witness for the Defendant also arrived at the same conclusions.**
> 4. That the evidence would indicate that the victim's testimony is absolutely necessary in order for the State to fully proceed in the prosecution of the case. Absence of her testimony may preclude prosecution.
>
> In consideration of all of which, the Court would grant the Motion to permit the child witness to testify by closed-circuit television.

(Emphasis added). [*Id.*].

Although the Petitioner is correct that the Court did not follow the statutory procedures exactly, defense counsel agreed to the changes enacted by the Court. Specifically, in regards to using master level psychologists instead of a doctoral-level psychologist or social worker with five years experience, the Court and the attorneys had the following conversation:

> GUARDIAN AD LITEM M. ZELENE HARMAN: 'The new statute provides that either it's a doctorate level psychologist or a licensed clinical social worker, which of course, a licenced clinical

psychologist falls somewhere in between . . . there was a stipulation that Greg Trainor could provide that information . . . I think we all recognize and acknowledged in the last matter that certainly Mr. Trainor has far more experience and education than a licensed clinical social worker with five years experience.  That is allowed . . .'

DEFENSE ATTORNEY GARRETT: 'I would agree with that.  I would definitely agree with that Your Honor, I mean . . .'

GAL: 'That, that is allowed to make that assessment and recommendation as a friend of the Court.  And so certainly, it just didn't specify a licensed clinical psychologist.  Either it was doctor's level psychologist or licensed clinical social worker.  And there's a large, you know, space in there between that Mr. Trainor does fall into and he's had, I believe, twenty plus years experience in working with children.'

[*Id.*, Transcript of Pre-Trial Hearing on May 28, 2002, p. 4 line 17 - p. 5 line 11, filed 1/13/03].  The Petitioner also agreed to allowing the GAL to be present in the room with the victim while she testified and stated that it might even be helpful. [*Id.* at p. 8 line 12 - p. 9 line 22].  Even if the GAL's presence did reassure the victim, as the defense counsel pointed out, the GAL would have been able to present in the courtroom if the victim had testified from the witness chair and the GAL would have had the same reassuring effect. [*Id.*].

Moreover, as in Maryland v. Craig, 497 U.S. 836, *supra* p. 14, at trial, the victim was under oath to tell the truth.  The defense counsel cross-examined the victim.  The jury could see the victim and judge her demeanor while she testified.  The jury watched the victim as they could any other witness testifying.

As for the jury's possible inference that the victim had to testify via closed-circuit television due to the Petitioner, the Court read the jury a cautionary instruction before the victim testified.  In that instruction, the Court did not say that the victim was testifying via closed-circuit television because of the Petitioner; rather, the Court just said generally that sometimes children are afraid of the whole courtroom setting and therefore must testify via closed-circuit television. [*State v. Ault*, No. 00-F-22, Trial Transcript, p. 36 line 17 - p. 37 line 15].  Therefore, the Court did not violate the Petitioner's right to confrontation by allowing the victim to testify via closed-circuit television.

Resp't Amd. Ex. 6 at 169-176 (emphasis in original).

Upon an independent review of the record, the undersigned finds that the state court's adjudication of petitioners' ground five was not contrary to clearly established federal law.  See

Maryland v. Craig, 497 U.S. 836, 845 (1990).[4]

Additionally, in light of the evidence presented in the state court proceedings, the undersigned does not believe that the state court's adjudication of the ground five involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[5]  Prior to trial, the state court conducted a hearing to determine the child victim's competency and ability to testify in open court.  The court heard evidence from two different master level psychologists, both of which found the child victim competent to testify, but unable to testify in open court with the petitioner present.  The trial court made the appropriate findings of fact and determined that closed-circuit television testimony was necessary.  To the extent that the trial court deviated from the statutory requirements for closed-circuit television testimony, those deviations either were with the consent of defense counsel or had no adverse effect on the petitioner's right of confrontation.

---

[4] In Craig, the child witness was permitted to testify via closed-circuit television.  The witness, the prosecutor, and defense counsel, withdrew to a separate room while the defendant remained in the courtroom with the judge and jury.  A video monitor recorded and displayed the child's testimony to those in the courtroom.  During this testimony, the child could not see the defendant and the defendant remained in contact with his counsel only through electronic communication.

[5] "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig, 497 U.S. at 845. One way to ensure the reliability of the evidence against a criminal defendant is through face-to-face confrontation. Id. at 846.  Face-to-face confrontation reduces the risk that "a witness will wrongfully implicate an innocent person." Id.  However, although face-to-face confrontation "forms the core of the values furthered by the Confrontation Clause, we (the Supreme Court) have nevertheless recognized that it is not the *sine qua non* of the confrontation right." Id. at 847 (internal quotations and citations omitted).  Therefore, "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose testimonial infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." Id. (quoting Delaware v. Fensterer, 474 U.S. 15, 22 (1985)).

Accordingly, ground five should be denied.

## F. Ground Six - Victim's Testimony was Uncorroborated and Inherently Incredible

In this ground, the petitioner asserts that his conviction cannot stand because it was based on the uncorroborated and inherently incredible testimony of a child victim. In support of this ground, the petitioner asserts that the child victim's testimony had no real or factual evidence to support it and that the testimony was coached and contradictory.

After the petitioner's Omnibus Evidentiary Hearing, the state habeas court found:

> The Court concludes that the Petitioner failed to prove that the victim's testimony was inherently unreliable or the result of suggestive interrogation techniques to the extent that it violated the Petitioner's right to a fair trial by due process of law as guaranteed in the U.S. Const. Amends. V and XIV and the WV Const. Art. III § 10.
>
> ***
>
> 'In any prosecution under this article, neither age nor mental capacity of the victim shall preclude the victim from testifying.' W.Va. Code § 61-8B-11(c).
> 'It is the role of the jury, and not the court on appeal or on review of a habeas corpus petition, to determine the credibility of witnesses.' State ex rel. Corbin v. Haines, 218 W.Va. 315, 624 S.E.2d 752 (2005).
> 'A conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury.' Syl. Pt. 3, Coleman v. Painter, 215 W.Va. 592, 600 S.E.2d 304 (2004) . . .
> The Petitioner argues that the Court should not have allowed the victim to testify at trial because her testimony was unreliable due to unfair interrogation techniques and her psychiatric and medical problems. [*Ault v. Haines*: No. 05-C-39, Supplemental Petition for Writ of Habeas Corpus p. 5-6]. The Petitioner also contends that the victim's testimony was further improper because the Court did not require an assessment of the child based on her known problems. [*Id.* at p. 8]. At the omnibus hearing on August 3, 2006, the Petitioner argued that the Court should have held a pretrial hearing to determine if the victim was competent to testify.
> In support of his claim that suggestive interrogation techniques were on the victim, the Petitioner provides no evidence. The only exhibit presented to this effect is the transcript of an interview with the victim

conducted by Lynn Foley on August 4, 2000. [*Id.*, Petition for Writ of Habeas Corpus Exhibit A]. At the omnibus hearing, the Petitioner testified that he felt Ms. Foley used suggestive interrogation techniques because she would ask the victim the same question, repeatedly, until Ms. Foley 'got the answer she wanted.' The Court finds that this interview does not contain suggestive interrogation techniques. Lynn Foley is certified to question child victims of sexual abuse and the methods she used aimed at that end and not at leading the child to a foregone conclusion. Furthermore, in the assessment of the victim's capacity to testify via closed-circuit television, Mr. Trainor found that 'there is no evidence that [A.C.'s] statements have been coerced and the emotional reactions that she has are consistent with experiencing a traumatic event.' [*State v. Ault*: No. 00-F-22 p. 221, Consult on [A.C.'s] Ability to Testify in Open Court Versus Being Able to Testify by Closed Circuit Television].

The Petitioner also contends that the medications the victim was taking prior to and during the incident on August 2, 2000 caused her to be vulnerable to suggestive prompting and to manipulation by adults. In support of this theory, the Petitioner presents a self compiled list of all of the possible side effects of the drugs which the victim took and how they could have possibly affected her mind. [*Ault v. Haines*: No. 05-C-39, Petition for Writ of Habeas Corpus Exhibit C 2]. However, the Petitioner offers no evidence that the victim suffered from any of these side effects or that they impaired her ability to think for herself in any way. There is no evidence that the medications made the victim susceptible to brainwashing, coaching, suggestive interrogation techniques, or memory replacement.

Furthermore, the Court did have the victim assessed by a licensed psychologist who reported that she would be able to testify reliably, accurately, and truthfully. The Court also held a hearing on the victim's ability to testify and found the victim to be competent to testify. [*State v. Ault*: No. 00-F-22 p. 206, Order entered 4/27/01]. Moreover, at that hearing the judge also conducted a West Virginia Rules of Evidence Rule 403 balancing test and determined that the victim's testimony was more probative to the charges than prejudicial to the Petitioner's case. [*Id.*].

As stated in the legal authorities above, the jury must judge the credibility of a witness' testimony. The victim testified under oath and was subject to cross-examination by the defense. The jury could see the victim as she testified and could observe her outward demeanor and the tone in which she answered questions. The Court did not err in allowing the victim to testify at trial especially considering the psychological evaluation done before trial, the pretrial hearing finding the victim competent to testify, and defense counsel's vigorous cross-examination of the victim at trial.

Resp't Amd. Ex. 6 at 176-181.

Upon an independent review of the record, the undersigned finds that the state court's adjudication of petitioners' ground six was not contrary to clearly established federal law. See Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (it is not within the province of the court to make credibility determinations).

Additionally, in light of the evidence presented in the state court proceedings, the undersigned does not believe that the state court's adjudication of ground six involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Prior to trial, the victim was ordered to undergo a psychological evaluation to determine her competency and ability to testify. Resp't Ex. 13. The child victim was examined by a licensed psychologist who found that she was capable of receiving accurate impressions of the assault and that she was able to communicate them. Resp't Ex. 14. The licensed psychologist determined that the child victim knew the difference between telling the truth and a lie and that she was competent to testify as a witness at trial. Id. At trial, the jury heard the victim's testimony and was able to judge her credibility. Thus, the undersigned agrees with the state habeas court that the petitioner has failed to prove that the victim's testimony was inherently incredible.

Accordingly, ground six should be denied.

**G. Ground Seven - Trial Court Erred in Denying Rule 29 Motion for Acquittal**

In this ground, the petitioner asserts that the trial court erred in denying his Rule 29 Motion. In support of this ground, the petitioner asserts that the petitioner made a proper Rule 29 Motion for Acquittal. The petitioner's motion was denied. The petitioner asserts that the denial of his motion

was in error as the prosecution never presented any evidence that the petitioner was the individual accused of the crime. Because the petitioner was never identified as the perpetrator of the crime, he asserts that the state failed to prove an element of the prima facie case for which he was charged. In addition, the petitioner asserts that even taking the evidence in the light most favorable to the prosecution, the State failed to present enough evidence to uphold the trial court's denial of his Rule 29 motion.

After the petitioner's Omnibus Evidentiary Hearing, the state habeas court found:

> The Court concludes that the Petitioner failed to assert a constitutional right violated by the trial court's denial of the Petitioner's motion for acquittal. Furthermore, the Petitioner failed to show that the Court erred in denying his Rule 29 Motion for Acquittal.
>
> ***
>
> 'A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.' Syl. Pt. 6, State v. McCracken, 218 W.Va. 190, 624 S.E.2d 537 (2005).
>
> 'A conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury.' Syl. Pt. 3, Coleman, 215 W.Va. 592, *supra* p. 23.
>
> 'A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed.' Syl. Pt. 2, Quinones, 218 W.Va. 388, *supra* p.7. . . .
>
> The Petitioner argues that the Court erred in denying his motion for acquittal because there was no identification of the defendant by any witness, including the child-victim, either at the time of trial or pretrial. [*Ault v. Haines*: No. 05-C-39, Supplemental petition for Writ of Habeas Corpus p.8]. The Petitioner also contends that the Court should have granted the motion for acquittal because he is actually innocent and the only evidence against

him came from the uncorroborated testimony of a 'medicated, impaired little girl with a seizure disorder and fetal alcohol syndrome who had suffered sexual abuse in the past with no forensic evidence and a doctor's report indicating only prior abuse that the Petitioner could not possibly have committed.' [*Id.* at p. 9].

This ground for habeas relief does not present a possible constitutional violation, and therefore, it should not be considered by the Court in a petition for writ of habeas corpus. However, even if the ground did present a potential constitutional violation, the Petitioner still would not be entitled to relief on this ground.

The alleged victim testified that the Petitioner sexually abused her. [*State v. Ault*; No. 00-F-22, Testimony of [A.C.], transcribed by County Court Reporters, p. 10 line 19]. She identified her perpetrator as Stoney, and Rock, the petitioner's nickname. [*Id.* at p.7 lines 3-10]. During opening arguments, defense counsel alerted the jury to the Petitioner's nickname of Rock. [*Id.*, Trial Transcript, p. 23 lines 3-5]. Furthermore, the investigating officer further testified that the victim indicated to him that Rock had sexually abused her, and the officer clearly stated on the record that Rock is a nickname for the Petitioner, Stoney Ault: . . .

Based on the testimony given during the State's case in chief, the State presented ample evidence to identify the Petitioner as the perpetrator.

At the omnibus hearing on August 3, 2006, the Petitioner testified that he did not believe he had been identified because the victim did not point to him during trial and say, 'he did it.' A conviction does not require this type of identification.

Furthermore, as stated above, a conviction for sexual abuse can be obtained solely on the testimony of the victim unless the victim's testimony in (sic) inherently unreliable. Syl. Pt. 3, <u>Coleman,</u> 215 W.Va. 592, *supra* p. 23. The Court held a competency hearing on the victim's ability to testify reliably and accurately. [*Id.* at p. 206, Order entered 4/27/01]. The psychological evaluation, completed at the request of the Petitioner, concluded that the victim could accurately and truthfully testify as to the events that took place. [*Id.*]. The credibility of the victim is a matter to be decided by the jury. Based on the victim's testimony, the Court did not err in denying the Petitioner's motion for a directed verdict.

Resp't Amd. Ex. 6 at 181-184

Upon an independent review of the record, the undersigned finds that the state court's

adjudication of petitioners' ground seven was not contrary to clearly established federal law. <u>See</u>

<u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (when reviewing a claim of the sufficiency of the

evidence in federal habeas review, the district court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt); see also Wiggins v. Corcoran, 288 F.3d 629 (4th Cir.), cert. denied in part by, 537 U.S. 1027 (2002) (resolving conflicting facts and determining the credibility of the witnesses is for the jury, not the court).

Additionally, in light of the evidence presented in the state court proceedings, the undersigned does not believe that the state court's adjudication of ground seven involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. At trial, the child victim testified that the petitioner took her to the "pink room" where he pulled down her pants and underwear, set her on a machine, pulled down his own pants and got on top of her. Resp't Ex. 8 (Trial Transcripts) at 58-59. Thereafter, the victim alleged that the petitioner put his "weenie" in her "front" and his finger in her butt. Id. at 60. These events allegedly happened in the petitioner's home in Grant County, West Virginia, at a time when the petitioner was 51 years old and the child victim was seven. Moreover, at the time of the alleged incident, neither the petitioner nor the victim was married to anyone.

Also testifying at trial was Betty Puffenbarger, a case manager from the Potomac Center. Id. at 123-24. Ms. Puffenbarger testified that the petitioner and his girlfriend had been approved by the Potomac Center as a foster/respite home. Id. at 124. As part of their application, petitioners' girlfriend was listed as the primary caregiver and the petitioner as a secondary caregiver. Id. at 126-27. Moreover, Ms. Puffenbarger testified that at the time the child victim was allegedly assaulted, she was staying in the petitioner's home through his contract with the Potomac Center and that he

was her custodian at that time.  Id. at 126-30.

Based on this testimony alone, it is clear that there is sufficient evidence to support the jury's finding of guilt.  The petitioner's identity was never an issue in this case.  The child victim clearly and repeatedly alleged that the petitioner committed the crime.  Indeed, it was never disputed that the alleged act took place in the petitioner's house during a time when the petitioner was acting as the victim's respite care provider through his contract with the Potomac Center.  The key issue in this case was whether or not the jury believed that the victim had been sexually assaulted or abused by the petitioner.  The victim testified that the petitioner did sexually abuse her, while the defendant testified that he did not.  Thus, in order to render a verdict, the jury had to judge the credibility of the witnesses and resolve those issues of fact.  Such determinations are properly the job of the jury and not within the province of federal habeas review.

Accordingly, ground seven should be denied.

## H.  Ground Eight - Failure to Give a Jury Instruction Proffered by the Defendant

In this ground, the petitioner asserts that the trial court erred in failing to give a jury instruction proffered by the defense.  In support of this claim, the petitioner asserts that defense counsel requested a Payne instruction.  See State v. Payne, 167 W.Va. 252, 280 S.E.2d. 72, 77-78 (1981).  According to the petitioner, a Payne instruction was necessary because the only witness to the crime was the child victim whose testimony was uncorroborated and failed to identify the petitioner as the perpetrator of the crime.

After the petitioner's Omnibus Evidentiary Hearing, the state habeas court found:

> The Court concludes that the Petitioner failed to prove that the trial court's failure to give the jury the Payne instruction denied the Petitioner of [his] right to a fair trial by due process of law.

\*\*\*

'Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. The trial court, therefore, has broad discretion in formulating its charge to the jury, so long as it accurately reflects the law. Deference is given to the circuit court's discretion concerning specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed for an abuse of discretion.' Syl. Pt. 4, Corbin, 218 W.Va. 315, *supra* p. 22.

'A Payne instruction concerns identification of the defendant. A Payne instruction does not concern the acts alleged to be perpetrated by the defendant.' State v. Williams, 206 W.Va. 300, 305, 524 S.E.2d 655, 660 (1999) . . .

The Petitioner argues that the jury should have been given a jury instruction based on the Payne case because no witness identified him at trial and the child victim's testimony was uncorroborated. He contends that the Court's failure to give this instruction denied the Petitioner of his right to a fair trial. [*Ault v. Haines*; No. 04-C-2, Petition for Writ of Habeas Corpus, p. 6, filed 1/12/ 04].

In Payne, the WVSC held that the trial court should have instructed the jury to scrutinize for veracity the uncorroborated identification testimony of the victim. State v. Payne, 167 W.Va. 252, 263, 280 S.E.2d 72, 79 (1981). The victim in Payne identified her assailant under the following circumstances:

> The record discloses that the prosecuting witness did not see her assailant until they were in a secluded, shaded area on the night the assault occurred. The record also disclosed that she gave [a] description of her assailant, prior to identifying the defendant, which were (sic) inconsistent with the defendant's physical appearance. We also note that the assault occurred on March 28, 1973, but the defendant was not identified as the assailant until May 9, 1973. There are indications in the record that the prosecuting witness may have been subjected to pressure by her father and the police to identify someone as her assailant between March 28 and May 9. Her initial identification of the defendant amounted to a statement that she 'believed' Robert Payne to be her assailant.

*Id.* at 260-261, 77. Furthermore, in Payne, the defendant was prevented from testifying. *Id.*

In Ronnie R. v. Trent, 194 W.Va. 364, 460 S.E.2d 499 (1995), the

defendant was accused of sexually molesting his oldest child from when the child was six years old until the child was eleven years old. On appeal of a habeas corpus petition, the defendant argued that the trial court erred in not declaring a mistrial for failure to give a <u>Payne</u> instruction. *Id.* The WVSC found that the trial court correctly determined that the <u>Payne</u> instruction would not have made a difference to the decision of the jury. *Id. . . .*

The facts of the Petitioner's case do not mirror those of the defendant in <u>Payne</u>; however, they are similar to the facts in <u>Ronnie R</u>. As in <u>Ronnie R.</u>, the victim knew the Petitioner prior to the abuse. Furthermore, the Petitioner testified at trial and refuted the allegations of abuse. As in <u>Ronnie R.</u>, the Petitioner's identity is not at issue. The question was not WHO sexually abused the victim, but WHAT did the Petitioner do.

As discussed in ground four, *supra*, the State offered sufficient evidence to identify the Petitioner as the perpetrator of the sexual abuse. Furthermore, the Petitioner does not allege that someone else was alone with the victim when the abuse took place or that someone else could have perpetrated the abuse. [*State v. Ault*; No. 00-F-22, Trial Transcript p. 235 line 1 - p. 266 line 24]. The only people around the victim at the time of the abuse where (sic) the Petitioner and the victim's little brother. Moreover, the Petitioner's counsel had the opportunity to argue and did argue that the <u>Payne</u> case applied; however, the Petitioner and his counsel did not convince the judge that the <u>Payne</u> instruction was a correct statement of law for this case. Finally, in its charge to the jury, the Court sufficiently instructed the jury on how to judge the credibility of witnesses. [*Id.*, p. 276 line 7 - p. 278 line 5]. Therefore, the Court did not violate the Petitioner's right to a fair trial by due process of law in failing to deliver the <u>Payne</u> instruction to the jury.

Resp't Amd. Ex. 6 at 185-188 (emphasis in original).

Upon an independent review of the record, the undersigned finds that the state court's adjudication of petitioners' ground eight was not contrary to clearly established federal law. The Fourth Circuit has held that, "[o]rdinarily, 'instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues,' and are therefore not reviewable in a federal habeas proceeding." <u>Nickerson v. Lee</u>, 971 F.2d 1125, 1137 (4th Cir. 1992)(quoting <u>Grundler v. North Carolina</u>, 283 F.2d at 802), <u>abrogation on other grounds recognized</u>, <u>Yeatts v. Angelone</u>, 166 F. 3d 255 (4th Cir. 1999). "A federal court may grant habeas relief only when the challenged instruction 'by itself so infected the entire trial that the resulting conviction violates due

process.'" Id. at 1137 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. While this does not mean that an instruction by itself may never rise to the level of constitutional error it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge." Cupp v. Naughten, *supra*.

In Neder v. United States, 527 U.S. 1 (1999), the Supreme Court held "that the omission [of an element of an offense or an error in a jury instruction] is subject to harmless error analysis. As noted previously, under the harmless error standard, habeas relief must be granted if the error had 'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. at 623. "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Id. at 637. "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." O'Neal v. McAninch, 513 U.S. 432, 436 (1995).

Additionally, in light of the evidence presented in the state court proceedings, the undersigned does not believe that the state court's adjudication of ground eight involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Syl. Pt. 5 of State v. Payne, 280 S.E.2d at 73 states:

> Where the State's case is based upon the uncorroborated and uncontradicted
> *identification testimony* of a prosecuting witness, it is error not to instruct the

> jury upon request that, if they believe from the evidence in the case that the crime charged against the defendant rests alone on the testimony of the prosecuting witness, then the jury should scrutinize such testimony with care and caution.

(Emphasis added). Moreover, the application of <u>Payne</u> has been limited to identification testimony. <u>See</u> <u>State v. Williams</u>, 524 S.E.2d 655 (W.Va. 1999). Here, as noted by the state habeas court, the petitioner's identity was never in question. Thus, a <u>Payne</u> instruction was not appropriate.

Accordingly, ground eight should be denied.

## I.  **Ground Nine - Giving Lesser Included Offense Instruction for First Degree Sexual Assault**

In this ground, the petitioner asserts that the trial court erred by giving the lesser included offense instruction for first degree sexual assault. In support of this claim, the petitioner asserts that he was found guilty of the lesser included offense. Thus, the jury verdict shows disbelief in the child victim's testimony. Therefore, if the lesser offense instruction had not been given, the petitioner asserts that there would have been no conviction for First Degree Sexual Abuse or Sexual Abuse by a Custodian because the petitioner asserts that the jury's questions show that they were confused by the instructions. Moreover, the petitioner asserts that giving the instruction constitutes reversible error because it was an additional crime charged by the instructions that was not charged in the indictment. Finally, the petitioner asserts that the trial court inaccurately applied the law in finding that you must have sexual contact to have sexual intercourse or sexual intrusion.

The state habeas court's findings on the lesser included offense instruction are noted in ground one above. Moreover, as found in ground one, *infra*, the trial court did not err in giving the lesser included offense instruction for first degree sexual assault. Accordingly, ground nine should be denied.

## J.  **Ground Ten - Cumulative Error Should have been Applied on Appeal**

In this ground, the petitioner asserts that the appellate court should have applied the cumulative error doctrine in this case. In support of this ground, the petitioner asserts that his conviction should have been set aside because even if the court found harmless error in the issues raised, the cumulative effect of those errors renders his trial fundamentally unfair.

After the petitioner's Omnibus Evidentiary Hearing, the state habeas court found:

> Petitioner argues that the errors and omissions of his counsel should be considered cumulatively. He contends that the cumulative effect of his ineffective assistance of counsel, along with the numerous trial errors and prosecutorial misconduct, so prejudice the Petitioner's right to a fair trial that the result was a miscarriage of justice and a grievous wrong against the Petitioner. He states that the sum total and cumulative weight of these errors and misconduct are such that they should bar retrial, especially in the context of the irreparable damage and taint to the child by highly suggestive interrogation techniques. [*Ault v. Haines*; No. 05-c-39, Petition for Writ of Habeas Corpus p. 5(k)] . . .
>
> 'Cumulative error occurs where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error.' Syl. Pt. 5, <u>State v. Smith</u>, 156 W.Va. 385, 193 S.E.2d 550 (1972) . . .
>
> The only error committed in the Petitioner's case, pretrial, during trial, or post trial, was his attorney's mistake in allowing the Petitioner's criminal history to be submitted to the jury on the forensic case submission report. The Court found that this error was harmless as the Court gave a curative instruction telling the jury that the information was irrelevant to the trial. Therefore, the Court finds that there is no cumulative error in the Petitioner's case which results in a miscarriage of justice.

Resp't Amd. Ex. 6 at 242-243.

Upon an independent review of the record, the undersigned finds that the state court's adjudication of petitioners' ground ten was not contrary to clearly established federal law. <u>See</u> <u>Fisher v. Angelone</u>, 163 F.3d 835, 853 n. 9 (4th Cir. 1998) ("legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error"); <u>see</u> <u>also</u> <u>United</u>

States v. Rivera, 900 F. 2d 1462, 1469 (10th Cir. 1990) ("The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. The purpose of a cumulative-error analysis is to address that possibility.").

Additionally, in light of the evidence presented in the state court proceedings, the undersigned does not believe that the state court's adjudication of ground ten involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. At best, the petitioner has established only one error, the submission of his prior criminal history to the jury. Further, the undersigned has determined that such error was harmless. Thus, the cumulative error analysis does not apply in this instance.

Accordingly, ground ten should be denied.

**K.  Ground Eleven - Plain Error; Faulty, Illegal and Amended Indictment**

In this ground, the petitioner asserts that a faulty, illegal and amended indictment was used to convict him. In support of this ground, the petitioner asserts that the instructions given to the jury do not appropriately charge the crimes as identified in the petitioner's indictment. Thus, the petitioner asserts that he was found guilty of crimes not charged in the indictment and his constitutional rights were violated.

This ground was not raised on direct appeal or in the petitioner's state habeas petition. Thus, due to the petitioner's supplement, his petition is a now "mixed" petition.[6] Therefore, the Court has three options. First, the petition could be dismissed. See Rose v. Lundy, 455 U.S. 509, 522 (1982) (petitions containing exhausted and unexhausted claims are subject to dismissal as "mixed"

_____

[6] A "mixed" petition is one which contains both exhausted and unexhausted claims.

petitions). Second, the Court may stay the instant petition and allow the petitioner to return to state court to exhaust his unexhausted ground. <u>See</u> <u>Rhines v. Weber</u>, 544 U.S. 269, 275 (2005) (in light of the "AEDPA's 1-year statute of limitations and <u>Lundy's</u> dismissal requirement, petitioners who come to federal court with 'mixed' petitions, run the risk of forever losing their opportunity for any federal review of their unexhausted claims"). Third, assuming that ground eleven can be denied on the merits, the Court may proceed with the case as filed. <u>See</u> 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.") (emphasis added).

Turning to the merits of the petitioner's claim, it has long been recognized that the United States Constitution does not require a State to charge a person by indictment. <u>See</u> <u>Hurtado v. California</u>, 110 U.S. 516, 538 (1884). Thus, ground eleven fails to raise a claim of constitutional dimension and should be denied. Nonetheless, the undersigned notes that any variance between the proof adduced at trial and the charge contained in the indictment is harmless. <u>See</u> <u>United States v. Castro</u>, 776 F.2d 1118 (3d Cir. 1985) (variance which does not change charging terms does not violate the 5th Amendment's Grand Jury clause).[7]

Accordingly, ground eleven should be denied.

## L.  Ground Twelve - Ineffective Assistance of Appellate Counsel

---

[7] According to <u>Castro</u>, constructive amendment to an indictment occurs "when the charging terms of the indictment are altered." <u>Castro</u>, 776 F.2d at 1122. Constructive amendment to an indictment is a *per se* violation of the defendant's Fifth Amendment rights. <u>Id.</u> at 1121-22. However, a variance occurs when the charging terms remain unchanged, "but the evidence at trial proves facts materially different from those alleged in the indictment." <u>Id.</u> at 1122. If a variance occurs between the charge contained in the indictment, and the evidence adduced at trial, the elements of the offense remain unchanged and no violation of the defendant's rights occur unless there has been some prejudice. <u>Id.</u> In the petitioner's case, the elements of the offense charged in the indictment remained unchanged by the evidence adduced at trial. Thus, his indictment was not illegally amended.

In this ground, the petitioner asserts that appellate counsel was ineffective for failing to argue that his state habeas counsel was ineffective. Moreover, the petitioner asserts that appellate counsel failed to appropriately develop his claims on appeal. Thus, the petitioner asserts that appellate counsel was so defective as to require the reversal of his conviction.

There is no constitutional right to an attorney in state post-conviction proceedings. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Therefore, this ground is not cognizable on federal habeas review.

Accordingly, ground twelve should be denied.

## IV. Recommendation

For the reasons set forth in this Opinion, it is recommended that the respondent's Motion for Summary Judgment (dckt. 25) be **GRANTED** and the petitioner's § 2254 petition be **DENIED** and **DISMISSED WITH PREJUDICE** from the active docket of this Court.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the

docket, and to counsel of record via electronic means.

DATED: April 8, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE